UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA                                    :
                                                            :
        - against -                                         :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
YEVGENIY PIKUS,                                             :
                                                            :   13 Cr. 25 (BMC)
                              Defendant.                    :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Defendant plead guilty to one count of violating 18 U.S.C. § 371 by conspiring to offer and pay health care kickbacks in violation of 41 U.S.C. § 1320a-7b(b)(2) (the "Anti-Kickback Statute" or "AKS"). Familiarity with the charged conduct is assumed, but briefly: Defendant was accused of participating in a kickback scheme in which, essentially, he and certain co-conspirators (including ambulette drivers) accepted reimbursements from Medicare and Medicaid for services rendered, and then directed portions of the money received toward beneficiaries, presumably as an inducement to gain their business. There was no allegation that defendant or his co-conspirators were responsible for the provision of medically unnecessary services.[1] Defendant was sentenced on March 20, 2015. The government sought an order of restitution to the victim agencies under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, or a discretionary order of restitution under § 3663(a)(1)(A). I deferred determination of restitution pursuant to § 3664(d)(5). For the reasons that follow, the government's request is denied.

---

[1] Prior to sentencing, but after I expressed concerns on the record about the amount of restitution being sought, the government for the first time suggested that there may have been medically unnecessary services provided in connection with the charged conspiracy, and that it was prepared to so prove at a Fatico hearing. For reasons discussed below, such a showing – made at this stage – would be irrelevant to the issue before me.

**DISCUSSION**

As a threshold matter, I assume without deciding that a conspiracy under 18 U.S.C. § 371 to violate the Anti-Kickback Statute would constitute an "offense against property" for purposes of the MVRA, or that I would be entitled to impose restitution under § 3663.

I must determine the proper measure of the financial loss suffered by the victim agencies that was "directly caused by the conduct composing the offense of conviction." United States v. Marino, 654 F.3d 310, 320 (2d Cir. 2011) (quotation omitted). The Second Circuit has made clear that "restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss," as is permissible in calculating loss for the purpose of a guidelines enhancement (and as happened in this case). See United States v. Zangari, 677 F.3d 86, 93 (2d Cir. 2012). The government seeks restitution in the amount of $654,993.67, the full amount of the reimbursements that, it argues, were "tainted" by defendant's unlawful kickbacks. In essence, the government's position is that because the agencies would not have paid out on claims that they knew to be tainted, the entire amount constitutes loss. Defendant's position is that the government received services of value equivalent to those reimbursements, and suffered no loss, or that at most the loss to the victim agencies is limited to the amount of the kickbacks.

The Second Circuit does not appear to have directly addressed this issue. However, in United States v. Vaghela, 169 F.3d 729 (11th Cir. 1999), just as here, the issue was the proper amount of restitution for a Medicare kickback scheme under the MVRA's predecessor statute. The Eleventh Circuit held that "we must assume that the loss suffered by [the agency] is an amount equivalent to the amount it paid to [the provider] in excess of the value of services rendered. And because [the provider] would not have participated in the kickback scheme if it was not profitable . . ., it is not unreasonable to assume that [the agency] was overcharged in the

amount of the kickbacks, and that the loss [the agency] suffered was equivalent to that amount." Id. at 736.

As Judge Mauskopf has recently held, this analysis is sound in the context of a purely private commercial transaction. See United States v. Finazzo, No. 10-cr-457 (RRM), 2014 WL 3818628, at *20 (E.D.N.Y. Aug. 1, 2014) (noting that "a portion of every payment [the victim company] made went toward generating secret kickbacks . . .") (citing, *inter alia*, Vaghela, 169 F.3d at 736; United States v. Gamma Tech Indus., Inc., 265 F.3d 917, 928 (9th Cir. 2001) ("[I]t is not unreasonable to assume that a natural result of paying kickbacks is inflation of the charges in order to make the scheme profitable for the payer of the kickbacks.")). The Second Circuit has tacitly endorsed this view, appearing to assume in the context of a kickback generated by a stock transaction that the *highest* appropriate measure of loss would be the amount of the kickback, but holding that where the transaction was in fact a collateralized loan, the only loss attributable to the kickback was the time value of the inflated loan amount. Zangari, 677 F.3d at 93-94.

There is an additional consideration in this case. The Court in Vaghela did not – and Judge Mauskopf in deciding Finazzo had no need to – take into account that Medicare and Medicaid payments are fixed. This means that unless there were unnecessary services provided, the victim agencies paid for defendant's and his co-conspirators' services at the price they thought those services were worth. A subsequent panel of the Eleventh Circuit acknowledged this in a later case that was even more skeptical of the same "loss" theory put forward by the government here. In United States v. Liss, 265 F.3d 1220 (11th Cir. 2001), the Court did not think that even the amount of the kickbacks should be viewed as loss to the government: "In the present case, the government has offered no evidence to suggest that the Medicare program

3

suffered any loss attributable to [the kickbacks]. Medicare paid [the provider] a fixed amount for its tests. The amount paid by Medicare to [the provider] was not affected by what [the provider] did with the money it received." Id. at 1232. The Court concluded that "[a]lthough [the provider] may owe restitution if it fraudulently billed for the services allegedly referred by [the defendant], billing fraud is not a part of [the defendant]'s offense conduct." Id. This view is compelling.

The government relies heavily on United States v. Rogan, 517 F.3d 449 (7th Cir. 2008), in support of its argument that because Medicare and Medicaid would not have paid claims they knew to be tainted, the entire payments constitute loss. However, that case concerns the Fair Claims Act ("FCA"), in which the "restitution" at issue is a civil remedy for unjust enrichment. In that context, there is no statutory mandate, as there is here, to limit restitution to losses "directly caused by the conduct composing the offense of conviction." Marino, 654 F.3d at 320.[2]

I recognize that in Liss, the defendant was the recipient of the kickbacks (for making referrals), and not the provider. However, fraudulent billing is no more a part of the charged conduct here than it was in that case. The Indictment on which defendant plead guilty in this case could not be more clear. He was charged with a conspiracy to violate 42 U.S.C. § 1320a-7b(b)(2), which provides that:

> [W]hoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind –

---

[2] In fact, the government relies further on U.S. ex rel. Freedman v. Suarez-Hoyos, No. 04-cv-933-T-24, 2012 WL 4344199 (M.D. Fla. Sept. 21, 2012), another FCA case, in which the Middle District of Florida distinguished Liss only because, just as here, "the defendants were charged with conspiracy to defraud the government and violating the AKS; the defendants were not charged with fraudulent billing." Id. at *5.

4

> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony . . . .

Other provisions of the Anti-Kickback Statute prohibit the making of false representations in connection with federal health care program reimbursements, and such conduct is of course the focus of the False Claims Act, but that is not the illegal conduct charged here.

The government's reliance on United States v. Canova, 412 F.3d 331 (2d Cir. 2005), is similarly misplaced. For one thing, that case concerned loss calculation for purposes of a guideline enhancement, which is governed by different rules and policy. See generally Zangari, 677 F.3d 86. Even more importantly, the failure to "conform to Medicare specifications" in that case was a failure to actually conduct tests in the manner prescribed – in other words, the government was getting different services than it had contracted for. That was not the case here, and it is an important distinction.

Finally, the government's 11th-hour contention that there may have been unnecessary services provided as a result of these kickbacks misses the point. Fraudulent provision of services was never part of the charged conduct. Kickbacks were. The only even arguable loss to the government that is "directly caused by the conduct composing the offense" is that the government overpaid by some amount for these services. See Liss, 265 F.3d at 1232.

Denying restitution in this case does not mean that defendant keeps any value he did manage to extract from the victim agencies as a result of their fixed reimbursement structure. The judgment in this case included forfeiture in the amount of $150,000, which was a component of the plea bargain. The total amount of the kickbacks received by defendant in connection with

the charged conduct in this case – somewhat surprisingly – is not in the record. But one might reasonably consider that the agreed-upon forfeiture amount is intended to reflect a disgorgement of approximately that amount.³ I recognize that forfeiture and restitution may be imposed concurrently, and often are, see United States v. Torres, 703 F.3d 194, 203-04 (2d Cir. 2012), but that is precisely because "[t]he measures are different, and the purposes distinct." id. at 203. They are different measures because it is possible for a defendant to gain without cause a victim to lose. I am convinced that that is what has happened here.

Defendant was charged with paying kickbacks, not with presenting false claims to Medicare and Medicaid. As in Liss, the victim agencies paid for medical services in the amount that they apparently believed those services were worth. Nothing about the charged conduct suggests that if the agencies had not paid defendant for these services, they would not have paid someone else. They therefore did not suffer a loss "directly caused by the conduct composing the offense of conviction." Marino, 654 F.3d at 320.

---

³ I was not easily persuaded that this is a correct view of defendant's gain in this case. Under the provision of the AKS that defendant was charged with conspiring to violate, all that is made illegal is the paying of kickbacks. Congress has authorized federal agencies to pay fixed amounts for medical services on behalf of certain eligible citizens. Defendant appears to have valued his services at less than those amounts. He resolved this arbitrage by sharing the difference with his customers, presumably in order to gain or keep their business. Had he spent the extra money on better magazines for his waiting room, we would not be here. Defendant obviously gained some amount by this arrangement, or he would not have done it – but I hesitate to say that the entire amount of the kickbacks was the amount of his gain. See Zangari, 677 F.3d at 93-94.

## CONCLUSION

The government's request for an order fixing restitution is denied. The Clerk is directed to enter an amended judgment that does not provide for restitution.

**SO ORDERED.**

                                                          U.S.D.J.

Dated: Brooklyn, New York
        June 16, 2015